
EOD
07/06/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| ELIZABETH BRATTON MOORE, § | Case No. 15-42046 |
| § | (Chapter 7) |
| Debtor. § | |

## MEMORANDUM OPINION AND ORDER

The debtor in this case, Elizabeth Bratton Moore, claims her Individual Retirement Account ("IRA") as exempt from her creditors under Texas law. Christopher Moser, the chapter 7 trustee, objects to her claimed exemption. The Court conducted an evidentiary hearing on the objection on April 7, 2016. The Court exercises its core jurisdiction over this contested matter, *see* 28 U.S.C. §§157(b)(2)(B) and 1334, and makes the following findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052 and 9014.

### I. FACTS

Moore suffers from early-onset Alzheimer's disease. She is unable to work. She filed a petition for relief under chapter 7 of the Bankruptcy Code on November 13, 2015.

In her bankruptcy schedules, which she filed with her petition, Moore disclosed an ownership interest in an IRA with a balance of $125,854.25. She claimed her interest in the IRA as exempt from her creditors under Texas law. She subsequently withdrew $28,000 from her IRA. A portion of the funds was withheld to pay income taxes, and Moore received the balance.

1

Moore deposited the funds into her bank account. She used the funds to pay living expenses over the next three months. At the time of the hearing, less than $1,000 remained in Moore's bank account.

Moser objects to Moore's claimed exemption of her IRA to the extent she has withdrawn funds from it. Moser does not dispute that the IRA qualifies as exempt under Texas law. Rather, he argues that funds invested in an IRA are only conditionally exempt. He argues that all funds withdrawn from the IRA by Moore, including funds withheld for the payment of income taxes, lost their exempt character by virtue of Moore's failure to use the funds to make a rollover contribution into another exempt retirement account.

## II. DISCUSSION

This case involves the scope of a debtor's claimed exemption of her interest in an IRA. Moore's claim of exemption is presumptively valid. *See* 11 U.S.C. §522(l) ("Unless a party in interest objects, the property claimed as exempt … is exempt"). Moser bears the burden of establishing that the exemption is not properly claimed under Texas law. *See* FED. R. BANKR. P. 4003(c) ("[T]he objecting party has the burden of proving that the exemptions are not properly claimed."). "Texas courts apply a liberal rule of construction to state exemption statutes." *In re Volpe,* 943 F.2d 1451, 1453 (5th Cir. 1991) (citations omitted).

### A. The Fifth Circuit's Decision in *Frost*

At the hearing on Moser's objection, Moser appeared to argue that this Court should interpret *In re Frost*, 744 F.3d 384 (5th Cir. 2014), as prohibiting a chapter 7

2

debtor from withdrawing funds from an exempt IRA to pay living expenses unless and until pre-petition creditors are paid in full. This Court recently rejected a similar argument by Moser and his counsel in another chapter 7 case. For the reasons stated on the record at the conclusion of the hearing, and explained more fully in this memorandum opinion, the Court likewise rejects Moser's argument under the facts of the present case.

The debtor in *Frost* filed a petition for relief under chapter 13 of the Bankruptcy Code. He claimed his homestead as exempt under the Texas Constitution, which generally exempts the homestead from the claims of creditors. *See* TEX. CONST. art. XVI, § 50. No one objected, and his homestead became exempt by operation of §522(l) of the Bankruptcy Code. The Supreme Court has described an exemption as "an interest withdrawn from the estate (and hence from creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991).

The debtor in *Frost* subsequently sold his exempt homestead. He did not use all of the sales proceeds to purchase a new homestead. The specific issue addressed by the Fifth Circuit was whether $18,000 in sales proceeds, which were being held in trust for the debtor's future use to purchase a new homestead, automatically became property of the bankruptcy estate when the debtor failed to use the sales proceeds to purchase a new home within six months.

In *Frost*, the Fifth Circuit distinguished the physical "homestead" from sales proceeds: "Once Frost sold his homestead, the essential character of the homestead changed from 'homestead' to 'proceeds' …." *In re Frost*, 744 F.3d at 387.

3

Homestead-sales proceeds are not protected by the Texas Constitution. The Fifth Circuit, therefore, turned to the Texas statutory exemption for homestead-sales proceeds to determine whether or to what extent the funds at issue were exempt.

"[R]ecognizing that there would be times when people would need to sell their homestead," the Texas Legislature "passed the proceeds exemption statute "to preserve the homestead protection afforded by the Texas Constitution in such cases by exempting sale proceeds from creditors' claims for six months." *Matter of England*, 975 F.2d 1168, 1174-75 (5th Cir. 1992) (quoting *Taylor v. Mosty Bros. Nursery, Inc.*, 777 S.W.2d 568, 570 (Tex. App. – San Antonio 1989)). The statute provides that "[t]he homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale." TEX. PROP. CODE §41.001(c). In *Frost*, the Fifth Circuit held that once the "conditional exemption" of the sales proceeds expired, the debtor "lost his right to withhold the sales proceeds from the estate." *In re Frost*, 744 F.3d at 389.

*Frost* does not control the present case. The present case involves Moore's claimed exemption of her IRA, not the proceeds from the sale of a home. Further, Moser failed to establish grounds for extending the holding of *Frost* to the IRA exemption statute at issue here – § 42.0021(a) of the Texas Property Code.

### B. The IRA Exemption Under Texas Law

When interpreting a Texas statute, this Court follows "the same rules of construction that a Texas court would apply – and under Texas law the starting point of [this Court's] analysis is the plain language of the statute." *Wright v. Ford Motor Co.*,

4

508 F.3d 263, 269 (5th Cir. 2007). When a statute is clear and unambiguous, Texas courts "apply its words according to their common meaning in a way that gives effect to every word, clause, and sentence." *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.,* 410 S.W.3d 843, 853 (Tex. 2012) (quotation marks and citation omitted). If a "statute's words are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an end." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651–52 (Tex. 2006).

> Here, § 42.0021(a) of the Texas Property Code currently provides that
>
> **a person's right to the assets held in or to receive payments**, whether vested or not, under any stock bonus, pension, profit-sharing, or similar plan, including a retirement plan for self-employed individuals, and under any annuity or similar contract purchased with assets distributed from that type of plan, and under any retirement annuity or account described by Section 403(b) or 408A of the Internal Revenue Code of 1986, and under any individual retirement account or any individual retirement annuity, including a simplified employee pension plan.

TEX. PROP. CODE §42.0021(a) (emphasis added). Notably, the IRA exemption statute does not simply exempt the individual retirement account itself. Instead, it clearly and unambiguously provides an unlimited exemption of the account holder's rights to the assets held in the account as well as the account holder's right to receive the payments from the account.

The IRA exemption scheme is fundamentally different than the homestead exemption scheme under Texas law. The Texas homestead exemption exempts the homestead itself, regardless of value. *Frost*, 744 F.3d at 387. In *Frost*, the Fifth Circuit distinguished Texas law from the law of other states that provide only a limited,

5

monetary exemption in the value of a homestead. *Id.* at 389. However, the Fifth Circuit reasoned that, upon sale, "Frost's interest in his homestead changed from an unconditionally exempted interest in the real property itself to a conditionally exempted interest in the monetized proceeds from the sale of that property." *Id.* "The object of the proceeds exemption statute was solely to allow the claimant to invest the proceeds in another homestead, not to protect the proceeds, in and of themselves." *Matter of England*, 972 F.2d at 1175.

An IRA, in contrast to a homestead, is a monetized asset. An IRA is "'nothing more than a savings account established to defer tax liability and to supplement the beneficiary's retirement income in the future.'" *See Sammons v. Elder*, 940 S.W.2d 276, 282 (Tex. App. – Waco 1997). A person uses an IRA to save for retirement, and the Texas exemption scheme prevents creditors from depriving people of a source of income in their old age. *See id.* Section 42.0021(a) exempts both the assets in the account and the right to payment – the asset that is exempt is distributed to the account holder and is not transformed, but, instead, remains exempt under the IRA exemption statute. Thus, in this case, the Court concludes that the distribution of the exempt asset received by Moore is exempt under the specific language of subsection (a).

This interpretation is also consistent with the legislative intent and purpose of the IRA exemption statute. *See Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.,* 410 S.W.3d 843, 853 (Tex. 2012) (Texas courts aim "to determine and give effect to the Legislature's intent" when construing a statute.). The Texas Legislature enacted the exemption at

issue here, §42.0021(a), "in 1987 in response to federal decisions holding that the benefits of retirement plans held by debtors in bankruptcy proceedings were not protected from the claims of creditors in Texas." *Jones v. Am. Airlines, Inc.*, 131 S.W.3d 261, 266 (Tex. App. – Fort Worth 2004) (citing *In re Goff,* 706 F.2d 574 (5th Cir. 1983) and *In re Brooks,* 60 B.R. 155 (Bankr. N.D. Tex. 1986)). Moser's interpretation of §42.0021(a) in this case, if adopted by this Court, would frustrate the purpose of the IRA exemption by preventing debtors from meeting their basic needs. *See Clark v. Rameker*, 134 S.Ct. 2242, 2247 (2014) (explaining that exemptions "serve the important purpose of protecting the debtor's essential needs") (citation omitted).

The Texas Legislature previously rejected Moser's argument that retirement funds lose their exemption after they are withdrawn from a retirement account. In 1988, a Texas appellate court held that retirement benefits were only exempt so long as they remained on deposit in a retirement account. *See Cain v. Cain*, 746 Sw2d 861 (Tex. App. – El Paso 1988). The Texas Legislature responded to this decision by amending the Texas turnover statute specifically to overrule *Cain* and correct its misinterpretation of Texas exemption law. *See* Texas House Research Organization, Bill Analysis, Tex. H.B. 1089, 71st Leg., Reg. Sess. (1989). *See also Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 322 (Tex. App. – Dallas 1997) (discussing the legislative history of TEX. CIV. PRAC. & REM. CODE §31.002(f)). The Texas turnover statute currently provides that "[a] court may not enter or enforce an order under this section that requires the turnover of the proceeds of, or the disbursement of, property exempt under any statute, **including Section 42.0021**,

7

Property Code." TEX. CIV. PRAC. & REM. CODE §31.002(f) (emphasis added). Thus, under Texas law, there is no temporal limit on an IRA exemption, that is, a distribution does not lose its protection and become subject to turnover if it is not spent in a particular way by a particular time.

### C. The 60-Day Rule in §42.0021(c)

At the hearing on Moser's objection to Moore's claim of exemption, Moser argued that a 60-day rule in §42.0021(c) applies to all distributions from an IRA. He argued that subsection (c) makes the IRA exemption conditional, like the Texas homestead-sales proceeds exemption, and that all funds distributed from an IRA retroactively lose their exempt character unless they are transferred into another retirement account within 60 days. He argued that he is entitled to recover all the funds Moore has received from her retirement account post-petition to pay her living expenses so that he can distribute the funds to her pre-petition creditors.

Moser's argument fails. Section 42.0021 as originally enacted could have been read to cause the loss of the exemption when an account holder received a distribution from an IRA and transferred, or "rolled over," the funds into another retirement account. *See* Karen K. Suhre, *Clarification of Retirement Benefits as Exempt Property*, 52 TEX. B.J. 38 (Jan. 1989). The Texas Legislature addressed this ambiguity in 1989 by amending subsection (b) to define qualifying rollovers and adding a new subsection (c) to protect qualifying rollovers from seizure by creditors. *See* Tex. H.B. 2295, 71st Leg., Reg. Sess. (1989). Section 42.0021(c) currently provides that

> Amounts distributed from a plan, annuity, account, or contract entitled to an exemption under Subsection (a) are not subject to seizure for a

8

creditor's claim for 60 days after the date of distribution if the amounts qualify as a nontaxable rollover contribution under Subsection (b).

TEX. PROP. CODE §42.0021(c).[1]

The 60-day period in subsection (c) echoes the Internal Revenue Code, *see* 26 U.S.C. §402(c), which allows 60 days for a distribution from an IRA to be transferred to another tax-exempt retirement account. An account holder who receives a distribution from an exempt IRA and does not transfer the distribution to another exempt account within 60 days may not exclude the distribution from her taxable income. *Id.* Texas Property Code §42.0021(c) expressly protects a rollover distribution from the account holder's creditors during this 60-day period.

Significantly, nothing in §42.0021(c) requires an account holder to safeguard distributed funds for 60 days or to transfer the funds into another retirement account. Section 42.0021(c) does not create, and Moser presented no evidence that the Texas Legislature intended to create, an "IRA proceeds rule" applicable to all distributions from an IRA analogous to the homestead proceeds rule. Indeed, Moser's reading of

---

[1] Section 42.0021(b) currently provides:

> Contributions to an individual retirement account that exceed the amounts permitted under the applicable provisions of the Internal Revenue Code of 1986 and any accrued earnings on such contributions are not exempt under this section unless otherwise exempt by law. Amounts qualifying as nontaxable rollover contributions under Section 402(a)(5), 403(a)(4), 403(b)(8), or 408(d)(3) of the Internal Revenue Code of 1986 before January 1, 1993, are treated as exempt amounts under Subsection (a). Amounts treated as qualified rollover contributions under Section 408A, Internal Revenue Code of 1986, are treated as exempt amounts under Subsection (a). In addition, amounts qualifying as nontaxable rollover contributions under Section 402(c), 402(e)(6), 402(f), 403(a)(4), 403(a)(5), 403(b)(8), 403(b)(10), 408(d)(3), or 408A of the Internal Revenue Code of 1986[3] on or after January 1, 1993, are treated as exempt amounts under Subsection (a). Amounts qualifying as nontaxable rollover contributions under Section 223(f)(5) of the Internal Revenue Code of 1986 on or after January 1, 2004, are treated as exempt amounts under Subsection (a).

TEX. PROP. CODE § 42.0021(b).

this provision as creating a "conditional" IRA exemption that disappears, retroactively, if the account holder fails to invest the funds into another exempt retirement account is contrary to the Texas exemption scheme for IRAs.

The purpose of an exemption is to render property "impregnable to the assaults of creditors." *Wood v. Wheeler*, 7 Tex. 13, 21 (1851) (discussing the homestead exemption). The "entire purpose" of IRAs "is to provide tax incentives for accountholders to contribute regularly and over time to their retirement savings." *Clark v. Rameker*, 134 S. Ct. 2242, 2247 (2014). Since an IRA is meant to supplement the account holder's income in retirement, the right to receive a distribution from an IRA also is expressly exempt under §42.0021(a). Further, the exemption does not disappear when the account holder actually receives a distribution. *See* TEX. CIV. PRAC. & REM. CODE §31.002(f). Here, for all the foregoing reasons, the Court concludes that the distribution the debtor received from her IRA did not lose its exempt status simply because she received it.

### D. The "Snapshot Rule" in Chapter 7 Cases

Finally, Moser's argument that the bankruptcy estate includes the post-petition distribution from Moore's IRA misapplies the so-called "snapshot rule." The snapshot rule originates from *White v. Stump,* 266 U.S. 310, 312 (1924), and states that "the bankrupt be allowed the exemptions 'prescribed by the state laws in force at the time of the filing of the petition'; in other words, it makes the state laws existing when the petition is filed the measure of the right to exemptions." The Supreme Court refined the snapshot rule in *Myers v. Matley,* 318 U.S. 622, 628 (1943), holding

10

that "the bankrupt's right to … [an] exemption becomes fixed at the date of filing … and cannot thereafter be enlarged or altered...."

In a chapter 13 case, after an exempt asset is withdrawn from the bankruptcy estate, the proceeds from a sale of the asset could re-enter the estate as post-petition income to be distributed to creditors through a plan of reorganization. *See, e.g., In re D'Avila*, 498 B.R. 150, 158 (Bankr. W.D. Tex. 2013). This is because property of the estate is not fixed on the petition date in a chapter 13 case. When an individual files a chapter 13 case, property of the estate also includes post-petition income and assets. 11 U.S.C. §1306(a)(1) and (2). Section 1306(a)(1) is one of the provisions that effectuates the bargain in chapter 13 cases "between the debtor and the debtor's creditors whereby the debtor is allowed to keep pre-petition property in exchange for promising a future stream of payments to the debtor's pre-petition creditors." *In re Ariyaserbsiri*, 07-41348, 2008 WL 5191200, at *2 (Bankr. E.D. Tex. Sept. 17, 2008).

Here, however, Moore filed a petition for relief under chapter 7 of the Bankruptcy Code. Petitions filed under chapter 7 are usually filed for the purpose of liquidation by individuals who lack the means to repay a portion of their debtors over time. *See* 11 U.S.C. §707(b)(2) (establishing a "means test" for individuals filing chapter 7 cases). In a chapter 7 case, with certain exceptions not applicable here, property of the estate consists of property in existence as of the date of the filing of the chapter 7 petition. *See* 11 U.S.C. § 541(a)(5). Chapter 7 does not contain any provision analogous to §1306(a)(1).

11

On the chapter 7 petition date in this case, Moore's interest in the assets contained in the IRA and her right to receive distributions from the IRA were unconditionally exempt from creditors under Bankruptcy Code §522 and Texas Property Code §42.0021(a). Her post-petition exercise of her right to receive distributions did not cause her to lose the exemption. The Court concludes that Moser failed to carry his burden to establish that Moore's exemption of her interest in her IRA was not properly claimed as of the petition date.

### III. CONCLUSION

Moore took a risk in spending the money she withdrew from her IRA before the Court ruled on Moser's objection. If this Court had sustained Moser's objection to her claimed exemption, then the IRA proceeds would have been part of her bankruptcy estate as of the petition date, and Moser could have sought recovery from Moore for her unauthorized use of estate property. Fortunately for Moore, that is not what happened.

A debtor's decision to withdraw funds from an exempt IRA may have consequences in bankruptcy by, for example, increasing the debtor's disposable income in a chapter 13 case. However, this Court does not understand *Frost* to have read §541(a)(5) out of the Bankruptcy Code or to have narrowed the exemptions available to individual debtors under §522 to such an extent that a chapter 7 estate now includes a debtor's post-petition exercise of her exempt right to receive payments from her IRA. For all the forgoing reasons,

**IT IS ORDERED** that Moser's objection to Moore's claimed exemption of her IRA is **OVERRULED.**

Signed on 7/6/2016

_Brenda T. Rhoades_   MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE